191 So. 909
**HARRISON v. MASON.**
**6 Div. 451.**

Court of Appeals of Alabama.
June 30, 1939.

Rehearing Denied Oct. 3, 1939.

Ritter, Wynn & Carmichael, of Birmingham, for appellee.

Edw. W. McDonald and Wm. D. Denson, both of Birmingham, for appellant.

SAMFORD, Judge.

It appears from the record in this case that plaintiff in the court below, appellee here, sold to her brother-in-law, W. F. Harrison, appellant, some household furniture in the year 1922, and that, from time to time, beginning in 1925, and ending in 1929, she loaned him money in various sums, aggregating, in all, five hundred dollars, the last loan of money being made in the year 1929. The lender did not keep any record of these loans, either as to the amounts of each respective loan, or of the dates upon which such loans were made.

In the year 1929, said appellee was at the home of appellant in Birmingham, and both parties having their memoranda before them reached an understanding as to the amount of the indebtedness from appellant to appellee and it was then verbally agreed between them that the total amount of the indebtedness of appellant to appellee was nine hundred dollars ($900), which was to be paid when appellant had finished paying up an indebtedness he then owed to Credit Union. Of what the above mentioned memoranda consisted the record does not disclose, nor does it show the month and day of the year 1929, when the verbal understanding and agreement was reached between appellee and appellant.

On the 27th day of January, 1933, appellee and appellant had a second meeting, or interview, and at this time no payments of any kind, or in any amount had been made by appellant upon his indebtedness to appellee, but he insisted, or requested that the amount of his indebtedness be reduced from the sum of $900, which amount they had agreed, verbally, was the correct sum of indebtedness to appellee, according to their mutual statement of the account in the year 1929. The record does not disclose why appellant insisted or requested that the amount of this indebtedness be reduced, but it does show that the last payment of any kind, and of any sum, made by appellant to appellee, on the various transactions between them, was made in the year 1922. In response to the insistence or request of appellant for a reduction of the amount of said indebtedness, appellee without any specific reason or cause for so doing, being given or shown, consented to a reduction of the indebtedness from $900.-00 to seven hundred and thirty-five dollars ($735), and on said 27th day of January, 1933, the following paper writing was signed by each of them:

"Jan. 27, 1933.

"It is understood and agreed that Walter F. P. Harrison owes Addie Mae Mason Seven Hundred Thirty-Five Dollars ($735.-00).

"In witness hereof we set our seals sign our names while being in good health and of sound mind.

"(Signed) W. F. P. Harrison

"Witness

"W. O. Vickery

"I agree that the above statement is true and correct.

"Addie Mae Mason."

The appellant continued to make default in paying his indebtedness to appellee up to the 29th day of October, 1937, when she brought her action in assumpsit on the common counts against appellant. The complaint contained six counts, none of which are involved upon this appeal except the third count, under which the plaintiff claimed of the defendant the sum of seven hundred and thirty-five dollars ($735) due on account stated between plaintiff and defendant on the 27th day of January, 1933, which sum of money, with the interest thereon, was alleged to be due and unpaid. Said complaint also alleged that said suit was brought on an account duly verified by affidavit.

The defendant filed his plea of the general issue to each count of the complaint, and along with said plea, he also filed his affidavit in which he alleged that the verified account filed by plaintiff was incorrect and baseless and that he disputed the whole account and denied any liability thereon.

In addition to the plea of the general issue the defendant filed special pleas, numbers 9, 10, 11, and 12. Pleas numbers 9, 10 and 11, respectively, interpose the statute of limitations of three, six and ten years (Code 1923, §§ 8943, 8944, 8947) in bar of the action, while plea number 12 avers that the contracts upon which the cause of action is based, are unenforcible and void under the statute of frauds (Code 1923, § 8034) in that said agreements were not in writing and were not to be performed within one year from the date thereof.

The plaintiff interposed demurrer to each of said special pleas, and the court below sustained said demurrers.

The only testimony offered upon the trial of the case was that of the plaintiff, which is set out in an agreed statement of facts, and also in a bill of exceptions,

both of which are incorporated in the record here filed.

After the introduction of the testimony of the plaintiff, the defendant having declined to offer any testimony, the plaintiff requested the affirmative charge in writing, and the court gave this charge. The defendant made request for the affirmative charge, but the court declined to give it.

■ The statutes of limitations set out in the Code of 1923, § 8939 et seq. are not designed, nor do they extinguish the obligation of a debt or contract. These are Statutes of repose and simply deny to a plaintff the right of recovery in a suit at law after the lapse of a specified time. In the instant case the Statute applicable is Section 8944, Subdiv. 5, of the Code of 1923.

Under the facts in this case there can be no doubt that the defendant was indebted to the plaintiff in the sum of $735. The collection of this debt was not pressed by the plaintiff, and under the facts the plaintiff had lost her right to enforce its collection prior to the 27th day of January, 1933; on which date, and after the running of the statute of limitations, the account between the parties was stated in writing, and signed by both parties.

■ The moral obligation to pay the debt was a sufficient legal consideration for the new promise to pay made after the bar of the statute was complete. 37 C.J. 1099 (569) 4. This text is supported by decisions from the United States Supreme Court, California, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, New York, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Vermont, West Virginia, and Wisconsin. A list of the cases is collated in 37 C.J. 1099, Note 73.

■ In 37 C.J. 1115 (589) 6, it is stated as a general rule that "An admission of the debt by the debtor in a statement of account furnished to the creditor is sufficient. But it has been held that an account stated does not take the original debt out of the operation of the statute of limitations, although it creates a new cause of action against which limitations begin to run from the time the account is stated."

■ Finally, in 37 C.J. 1098 (566)3: "The general rule is that a new promise, whether made before or after the bar is complete, will avoid the operation of the statute of limitations," and that statement is supported by a long list of decisions of courts of last resort throughout the Union, headed by our own Supreme Court in St. John v. Garrow, 4 Port. 223, 29 Am.Dec. 280, where Hopkins, Judge, says: "An acknowledgment revives the debt, proof of the admission, supports the cause of action, stated in the declaration, and is proper, under a general replication to a plea of the statute. A cause of action is held to accrue, from the time an acknowledgment is made: the effect of one is, therefore the same, whether made before or after the bar of the statute was created. An acknowledgment to be followed by these effects, must be an unconditional one, that the debt is due, or the liability exists, when the acknowledgment is made, and not merely that the demand was originally just." To support the foregoing the learned justice cites numerous authorities.

■ In the instant case, there is an unqualified acknowlegment of the debt due from this defendant to this plaintiff. The declaration in the complaint is on that stated agreement. Under the decision hereinabove cited, the statute of limitations began to run on January 27, 1933, and this suit having been brought within six years from that time, the plaintiff was entitled to recover and under the evidence was entitled to the general affirmative charge.

Assuming therefore that the debt from defendant to plaintiff was an open account and was barred by the statute of limitations of three years, it still was an obligation, and when the parties stated the account between themselves on January 27, 1933, an obligation arose upon which a suit could be brought, and the statute began to run from that date.

We are not unmindful of Section 8964 of the Code of 1923, which provides: "No act, promise, or acknowledgment is sufficient to remove the bar to a suit created by the provisions of this chapter, or is evidence of a new and continuing contract, except a partial payment made upon the contract by the party sought to be charged before the bar is complete, or an unconditional promise in writing, signed by the party to be charged thereby." The statement signed by the parties stating the account between them on January 27, 1933, was certainly plain, and unequivocally admitted an indebtedness on a stated account, which thereby carried with it the implied promise to pay.

In the case of Ross v. Ross, 20 Ala. 105, the language used by the debtor to the creditor was as follows: "There are some notes and accounts between you and me * * * that are probably out of date, and I am willing to acknowledge them all in date, if you are," to which the creditor replied: "I always expected to do so." The Court held that the language used was an acknowledgment of the correctness of the debt, and a willingness to pay; and also, that this was an implied promise to pay, and was equivalent to an expressed promise to pay, taking the case out of the statute of limitations.

In the case of Townes et al. v. Ferguson, 20 Ala. 147, the language used by the debtor: "The account is a good one, but I cannot pay it before January, at which time I will be receiving money," etc. The Court held that this was an admission of the correctness of the demand and a willingness to pay.

In the case of Evans v. Carey, 29 Ala. 99, the complaint was that the plaintiff had paid a sum of money for defendant as his endorser in the bank; whereupon, defendant said, if plaintiff had paid anything on account for him that he would, and was willing, to pay it to the plaintiff. The Court held that the words amounted in law to an expressed promise to pay.

Judge Toulmin in writing the opinion in Re McGuire & Hanlein, D.C., 132 F. 394, 396, recognizes the foregoing opinions as being in opposition to the decision there being rendered by him, but disposes of them in the following manner: "The decisions referred to must have been made before the present statute was enacted." This is not a fact, the Statute has been the same since the Code of 1852; whereas, the decisions above cited were rendered after that time.

Even in the McGuire v. Hanlein case, supra, the Judge writing the opinion says: "The promise may be expressed or implied, but it must be clear and explicit." Certainly, in the instant case it is clear and explicit that an account has been stated between the parties, and the implication arises that the amount due will be paid. This takes this obligation from within the statute.

The case of Chapman v. Barnes, 93 Ala. 433, 9 So. 589, upon which was based the decision of McGuire v. Hanlein, supra, was a suit on the common counts relying upon amounts due from the defendant to plaintiff against which there was interposed a plea of statute of limitations; while, in the instant case the suit is upon an account stated, which is a new obligation based upon a valuable consideration. Even in the Chapman v. Barnes case, supra, there is recognized the rule that, a subsequent promise to pay, made after the statute of limitations has effected a bar where unconditional in its terms and containing an admission of the indebtedness in a certain and definite sum removes the bar of the statute; but, that case is not authority. There, the suit was on the original obligation as to which the statute had effected a bar. Here, the suit is on a new obligation, having for a consideration the original debt. The obligation is clear and definite as to the amount due and raises the implication to pay.

The judgment is affirmed.

Affirmed.

BRICKEN, Presiding Judge (dissenting).

Upon submission of this cause in this court, it was, in regular order, assigned to the writer, and when taken up for consideration and determination, the writer wrote the opinion herein set out below. Upon consultation my associates failed to concur in the opinion thus prepared, and the views of the majority are hereinabove expressed in the opinion prepared by SAMFORD, J., of this court. In its preparation, the majority opinion adopted the first three or more pages of the opinion as prepared by the writer verbatim, up to and including the statement, "The defendant made request for the affirmative charge, but the court declined to give it."

The writer will permit the opinion as originally prepared to remain intact, except of course, the order of reversal of the judgment; the majority opinion as to this must here prevail.

It appears from the record in this case that plaintiff in the court below, appellee here, sold to her brother-in-law, W. F. Harrison, appellant, some household furniture in the year 1922, and that from time to time, beginning in 1925, and ending in 1929, she loaned him money in various sums, aggregating in all, five hundred dollars, the last loan of money being made in the year 1929. The lender did not keep any record of these loans, either as to the amounts of each respective loan, or of the dates upon which such loans were made.

In the year 1929, said appellee was at the home of appellant in Birmingham, and

both parties having their memoranda before them reached an understanding as to the amount of the indebtedness from appellant to appellee and it was then verbally agreed between them that the total amount of the indebtedness of appellant to appellee was nine hundred dollars ($900), which was to be paid when appellant had finished paying up an indebtedness he then owed to Credit Union. Of what the above mentioned memoranda consisted the record does not disclose, nor does it show the month and day of the year 1929, when the verbal understanding and agreement was reached between appellee and appellant.

On the 27th day of January, 1933, appellee and appellant had a second meeting, or interview, and at this time no payments of any kind, or in any amount had been made by appellant upon his indebtedness to appellee, but he insisted, or requested that the amount of his indebtedness be reduced from the sum of $900, which amount they had agreed, verbally, was the correct sum of indebtedness to appellee, according to their mutual statement of the account in the year 1929. The record does not disclose why appellant insisted or requested that the amount of this indebtedness be reduced, but it does show that the last payment of any kind, and of any sum, made by appellant to appellee, on the various transactions between them, was made in the year 1922. In response to the insistence or request of appellant for a reduction of the amount of said indebtedness, appellee without any specific reason or cause for so doing, being given or shown, consented to a reduction of the indebtedness from $900.00 to seven hundred and thirty-five dollars ($735), and on said 27th day of January 1933, the following paper writing was signed by each of them:

"Jan. 27, 1933.

"It is understood and agreed that Walter F. P. Harrison owes Addie Mae Mason Seven Hundred Thirty-Five Dollars ($735.-00).

"In witness hereof we set our seals sign our names while being in good health and of sound mind.

"(Signed)    W. F. P. Harrison
"Witness

"W. O. Vickery

"I agree that the above statement is true and correct.

"Addie Mae Mason."

The appellant continued to make default in paying his indebtedness to appellee up to the 29th day of October, 1937, when she brought her action in assumpsit on the common counts against appellant. The complaint contained six counts, none of which are involved upon this appeal except the third count, under which the plaintiff claimed of the defendant the sum of seven hundred and thirty-five dollars ($735) due on account stated between plaintiff and defendant on the 27th day of January, 1933, which sum of money, with the interest thereon, was alleged to be due and unpaid. Said complaint also alleged that said suit was brought on an account duly verified by affidavit.

The defendant filed his plea of the general issue to each count of the complaint, and along with said plea, he also filed his affidavit in which he alleged that the verified account filed by plaintiff was incorrect and baseless and that he disputed the whole account and denied any liability thereon.

In addition to the plea of the general issue the defendant filed special pleas numbers 9, 10, 11, and 12. Pleas numbers 9, 10 and 11, respectively, interpose the statute of limitations of three, six and ten years in bar of the action, while plea number 12 avers that the contracts upon which the cause of action is based, are unenforcible and void under the statute of frauds in that said agreements were not in writing and were not to be performed within one year from the date thereof.

The plaintiff interposed demurrer to each of said special pleas, and the court below sustained said demurrers.

The only testimony offered upon the trial of the case was that of the plaintiff, which is set out in an agreed statement of facts, and also in a bill of exceptions, both of which are incorporated in the record here filed.

After the introduction of the testimony of the plaintiff, the defendant having declined to offer any testimony, the plaintiff requested the affirmative charge in writing, and the court gave this charge. The defendant made request for the affirmative charge, but the court declined to give it.

The jury returned a verdict in favor of plaintiff, and assessed her damages at seven hundred and thirty-five dollars ($735). Judgment was entered accordingly, from which this appeal was taken.

Errors assigned are as follows:

(1) The giving of the general affirmative charge in favor of plaintiff. (2) The admission in evidence of the paper

writing dated January 27, 1933, hereinabove, set out. (3) The refusal of the general affirmative charge in favor of defendant.

It is the insistence of appellant that the action was and is subject to the bar of the statute of limitations of six years, and that the paper writing, supra, was, in law, insufficient and ineffectual to prevent the bar of the statute, and was therefore incompetent, illegal and immaterial evidence against him upon the trial of this case.

It is the insistence of appellee that the account between her and appellant which, so far as this case is concerned, originated in the year 1922, and continued as an open account until the year 1929, when it was first stated, and that before the bar of the statute of limitations of six years was complete, said account was restated between the parties on January 27, 1933, and that the action, or suit, in the court below, being based upon a stated account between the parties of date January 27, 1933, the statute of limitations of six years, applicable to stated accounts, had not operated to bar the action, or suit, which was commenced on October 29, 1937.

It has been said by our Supreme Court in the case of Reed v. Robinson, 213 Ala. 14, 104 So. 130, that: "A statement of account becomes a 'stated account,' with its legal consequences, when 'it is actually placed in the hands of the party to be charged, and, with knowledge of its purport' he expressly assents to the balance, or that acquiescence is implied."

Appellee contends that her statement of account with appellant became a stated account on some unspecified date in the year 1929, for that, in said year, "she and the defendant, had their various memoranda before them and they agreed at the defendant's house in Birmingham that defendant owed her nine hundred dollars ($900.00), which was to be paid her when the defendant paid his indebtedness to the Credit Union, amounting as she recalled to the sum of three hundred dollars, ($300.00). This agreement was verbal and no writings were then entered into." This was the only testimony offered upon the status, or character, of the account sued upon, and according to the above testimony said account became a stated account upon some unknown and unspecified day in the year 1929. Reed v. Robinson, supra. It was not necessary, as is conceded by counsel for appellant, for the account, so stated, to be evidenced by a paper writing. Lallande v. Brown, 121 Ala. 513, 515, 25 So. 997. The law imposed a duty upon Harrison with reference to this account—the implied duty of paying the amount he owed thereon.

The law of this State does not require the debtor to expressly agree to pay the amount agreed upon in order to change the status of transactions between parties from an open account into a stated account. We think any other conclusion is foreclosed by the case of Loventhal & Son v. Morris, 103 Ala. 332, 336, 15 So. 672, 673, wherein it was said: "Whether the account consists of a single item or many items, if the terms of the contract have not been adjusted and agreed upon, the demand is an open account. Battle v. Reid, 68 Ala. 149; Gayle['s Adm'r] v. Johnston, 72 Ala. 254 [47 Am.Rep. 405]. An account becomes stated when a specified indebtedness is admitted to be correct. The mere admission of indebtedness alone will not render an account stated, but the admission must be of the sum charged, and claimed to be due. The admission may be express, or it may arise by implication of law, as where an account is rendered to a debtor, and he retains it, and makes no objection within a reasonable time."

Applying the rule declared in the Loventhal case, supra, to the case at bar, we see that in order to render the status of the transactions between appellant and appellee into a stated account, it was only necessary for him to admit that he was indebted to appellee in the sum charged, viz.: Nine hundred dollars ($900). The evidence in this case shows, without dispute, that in January, 1929, he agreed (admitted), that he owed, i. e. was indebted to, the appellee the amount of nine hundred dollars, the sum charged. He complied with the rule requiring admission, expressed or implied, of his indebtedness to appellee in the sum charged and claimed by her to be due. The fact that said sum was to be paid by him only after he had paid his indebtedness to the Credit Union did not change the status of the account then agreed to be due between the parties.

The law not only imposed upon appellant the implied duty of paying his indebtedness to appellee, but it also imposed upon her the duty of diligence in the assertion of her demand. The lapse of time, without payment being made, necessary to create a bar to an action upon a stated account is, under the statute of limitations,

a period of six years, running from the date of said account. Code 1923, § 8944.

According to the testimony of appellee herself, the only testimony offered upon the trial of the case, as above stated, the appellant had never made any payments on this account from the date of its statement to the date of the bringing of the suit, her statement being that he had made her no kind of payment since the year 1922. The statute of limitations of six years was then effective against the action, which was begun October 29, 1937, unless said statute was rendered inoperative as against said account by the paper writing, dated January 27, 1933, and hereinabove fully set forth.

Section 8964 of the Code 1923, provides in substance that no act, promise, or acknowledgment is sufficient to remove the bar of the statute of limitations, *or is evidence of a new and continuing contract,* except, (1) a partial payment made upon the contract by the party sought to be charged before the bar is complete, or, (2) *an unconditional promise in writing,* signed by the party to be charged thereby.

In Whitfield v. Hatch, 235 Ala. 38, 177 So. 149, 150, the Supreme Court said: "This statute is clear and 'unequivocal; says what it means and means what it says."

The statute was adopted to clarify the situation then existing with reference to the conditions upon which the running of the statute of limitations was to be suspended. The method prescribed by the statute for suspending the running of the statute of limitations, once it began to run, is exclusive. Now, the rule in Alabama is that—"when a statute limits a thing to be done in a particular manner, it includes in itself a negative; and the negative is, that it shall not be done otherwise. The limitation exists, whenever the statute prescribes the particular manner in which the thing must be done." Bickley v. Keenan, 60 Ala. 293; Henderson et al. v. Kirkland et al., 127 Ala. 185, 28 So. 674.

As we see it, the sole question presented in this case, is whether the paper writing, dated January 27, 1933, is an unconditional promise in writing, sufficient to remove the bar of the statute of limitations, within the meaning of said section 8964 of the Code 1923. And this question has been decisively answered in the negative by the Supreme Court in the case of Chapman v. Barnes, 93 Ala. 433, 9 So. 589, 590, where

it was said: "This leaves for consideration, on the question whether the bar of the statute was removed by a written promise of defendant, the letters of October 15, 1882, and September 23, 1883, to Mrs. and Mr. Watrous, respectively. *They are certainly not wanting in acknowledgments of the indebtedness,* and *are,* it may be admitted, *sufficiently specific as to the amount thereof.* They *express a desire* and *expectation to pay it.* They evince a purpose and willingness to pay it after a time. * * * But neither of these letters can be construed into an unconditional promise to pay the debt, nor into an acknowledgment of its existence, *accompanied by an unequivocal expression of a willingness to presently pay it,* from *which,* in many jurisdictions at least, *the unconditional promise required* by statute *might be implied. The letters do not import* the written *absolute undertaking to pay the debt* required to a removal of the bar of the statute." (Italics ours.)

The Code section under consideration, has, without substantial modification or change in its provisions, been incorporated in every codification of the laws of this State, since the above construction of the provisions of said Code section by our Supreme Court, and said construction is now, of course, by legislative enactment, a part of said section of the Code.

The cases cited by appellee from this jurisdiction have been examined with care. We do not find any of them, announced since the adoption of the above statute, in conflict, in any material aspect, with the pronouncement in the case of Chapman v. Barnes, supra. On the contrary, the construction of the statute as declared in the Chapman case has been steadily adhered to by our Supreme Court. The latest case cited by appellee is May et al. v. Mathers, 233 Ala. 654, 656, 172 So. 907, 908. In that case the court said: "It has been declared by this court that an acknowledgment under section 8964 'must go to the length of admitting the present existence of a debt, which the party is willing to pay' and that there is no rule which requires that its proof 'shall be different in measure, or more strict than that which is required to establish any disputed fact in a civil suit.'" Strickland's Adm'r v. Walker, 37 Ala. 385.

The case of Strickland's Adm'r v. Walker cited by the court in May case, supra, while declaring a charge which stated that before the plaintiff could recover he must

satisfy the jury by evidence *clear* and *explicit* of the debtor's assent to an entry made by the creditor, involved in that case, to be erroneous as requiring too high a degree of proof, also declared that if an acknowledgment was relied upon to revive a debt barred by the statute of limitations then—"that acknowledgment must go the length of admitting the present existence of a debt," *which the party is willing to pay,* and declares the principle fully settled in this State.

In the case of Dacovich v. Schley et al., 5 Cir., 134 F. 72, 74, cited by appellant, the court declined to determine whether the due bill, there involved, was, under the Alabama Statute, sufficient to suspend the running of the statute of limitations, but held that said due bill was a provable liability against the makers thereof in a bankruptcy proceeding because, as held by the court, said due bill was given in payment of a precedent and independent liability. The court said: "We do not find it necessary to determine whether the due-bill in question would, under the statutes and decisions in Alabama, be sufficient to prevent the running of the statute of limitations. The original debt unquestionably would be barred in six years from its date. Code Ala. 1896, § 2796."

The insistence of appellee, that the paper writing dated Jan. 27, 1933, was a new promise, based upon a legal consideration, is untenable. Said instrument is the clearly expressed acknowledgment of appellant that he owed appellee the sum of seven hundred and thirty-five dollars. It implies a duty imposed by law, the duty of paying said amount, but it does not of itself imply a promise to pay it. The language used in said instrument cannot be construed, expressedly or impliedly, into an unconditional promise to pay the indebtedness, which he was under the duty, or obligation to pay. It may be admitted that the paper writing was prepared by a person not skilled in drawing legal documents, but nevertheless this instrument states very clearly what it means. It was not a mere idle gesture of the parties. It is the written, binding admission of appellant that he was indebted to appellee in the sum specified, and, in the event a suit had been brought within the statutory period against the maker, it would have been effective to establish the fact of said indebtedness, a fact, it may be said, that before the execution of said instrument rested entirely in parol. What the parties intended must be ascertained from the language of the instrument. Courts cannot make contracts for parties which they did not make for themselves, nor can they remake contracts for litigants. The province of the court, in this respect, is to give effect to a contract according to its obvious meaning, as shown by its language when expressed in unambiguous terms. Harris & Co. v. Thomas, 17 Ala.App. 634, 88 So. 51; Long v. Holden, 216 Ala. 81, 112 So. 444, 52 A.L.R. 536; Pennsylvania Fire Ins. Co. v. Malone, 217 Ala. 168, 115 So. 156, 56 A.L.R. 1075. Said written instrument, according to its terms and provisions, as expressed in the language used, is not the unconditional promise of the maker to pay the indebtedness there acknowledged, and is not, therefore, an act, promise or acknowledgment sufficient to remove the bar of the statute of limitations, which had been running against the debt for at least four years when said instrument was signed.

It is the judgment of this court that the court below erred in allowing the introduction of said written instrument in evidence over the timely objections interposed to its introduction by the defendant.

We are also of the opinion that the trial court committed error in giving the general affirmative charge for the plaintiff; and also erred in refusing such charge which was requested in writing by the defendant.

As stated, the foregoing was prepared originally as the opinion in this case. The majority opinion must prevail, and what has been said hereinabove expresses the dissenting views of the writer, who is still of the opinion that error prevailed, and that this cause should be reversed and remanded.